UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| MINNESOTA BUREAU OF CRIMINAL APPREHENSION & HENNEPIN COUNTY ATTORNEY'S OFFICE,<br><br>　　　　　　　Plaintiffs,<br><br>　v.<br><br>KRISTI NOEM, *in her official capacity as Secretary of the U.S. Department of Homeland Security*; JOHN CONDON*, in his official capacity as Acting Executive Associate Director of Homeland Security Investigations*; U.S. Department of Homeland Security; TODD LYONS, *in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement*; MARCOS CHARLES, *in his official capacity as Acting Executive Associate Director, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement*; RODNEY SCOTT, *in his official capacity as Commissioner of U.S. Customs and Border Protection*; U.S. Customs and Border Protection; GREGORY BOVINO, *in his official capacity as Commander of the U.S. Border Patrol*; U.S. Border Patrol; DAVID EASTERWOOD, *in his official capacity as Acting Director, Saint Paul Field Office, U.S Immigration and Customs Enforcement*; U.S. Immigration and Customs Enforcement; PAMELA BONDI, *in her official capacity as Attorney General of the United States*; KASHYAP PATEL, *in his official capacity as Director of the Federal Bureau of Investigation*.<br><br>　　　　　　　Defendants. | Case No. _____ |

## DECLARATION OF DREW EVANS

I, Drew Evans, declare and state as follows:

1. I am the Superintendent of the Minnesota Bureau of Criminal Apprehension (BCA). This declaration is submitted in support of Plaintiffs' Motion for a Temporary Restraining Order. The statements made in this declaration are based upon my personal knowledge, reasonable inquiry, and information made available to me in the course of my official duties as Superintendent of the BCA, plus records and information gathered by BCA staff.

2. When a law enforcement officer uses force and a person dies or is seriously injured in the State of Minnesota, agents with the BCA's Force Investigations Unit investigate the officer's actions to determine the circumstances of the incident.

3. The BCA investigates use of deadly force, such as when an officer shoots at someone.

4. The local jurisdiction typically requests the BCA's assistance in investigating the use of force.

5. After the BCA completes an investigation regarding the use of force by an officer, the BCA submits a report, without a recommendation, to the County Attorney's Office with jurisdiction over the incident.

6. Historically, the BCA has also responded to shootings involving federal law enforcement. In the past, the BCA has often handled these types of investigations without federal involvement. If federal law enforcement is involved in the investigation, the BCA has historically worked in cooperation with the Federal Bureau of Investigations (FBI) to conduct a complete and thorough investigation of those incidents.

7. On January 24, 2026, at approximately 9:30 AM, the BCA's Force Investigation Unit responded to a Use of Deadly Force (UDF) incident involving ICE Agents.

8. The incident was reported to have occurred in the area of 26th Street East and Nicollet Avenue in Minneapolis, Minnesota, in Hennepin County.

9. According to videos taken by onlookers at the incident, it appears the following occurred:

   a. On January 24, 2026, ICE agents had contact with a subject in the area of 26th Street East and Nicollet Avenue in Minneapolis.

   b. For unknown reasons at the current time, a struggle ensued between the subject and several ICE agents.

   c. Shots were fired and the subject was shot.

10. It is my understanding that the subject was transported to the Hennepin County Medical Center where he was pronounced dead.

11. The BCA responded to the scene at the request of the Minneapolis Police Department and arrived within an hour of the shooting. BCA was at the scene before the FBI.

12. As the BCA was responding, I was in contact with federal authorities to let them know that we would be on site for an investigation.

13. When the BCA agents and crime scene personnel arrived, they were blocked by federal agents with the DHS from accessing the scene

14. The BCA continued to make contact with federal authorities, such as the U.S. Department of Homeland Security (DHS), to try to attempt to access the scene so that the

BCA could gather evidence, understand what occurred, and work through our normal investigative process. DHS did not respond.

15. The BCA team also secured a search warrant for the scene that was signed by Minnesota District Court Judge Gina Brandt at 11:54 AM on 1/24/26. A true and correct copy of the search warrant application is attached as **Exhibit A.**

16. Obtaining a warrant to access a public space is unusual. But we thought it was necessary given the federal authorities' refusal to allow us access to the space.

17. The BCA then presented the signed search warrant to the federal agents.

18. Federal agents once again blocked the BCA agents and crime scene personnel from accessing the scene.

19. In my 20-plus years at the BCA, prior to 2026, I had never encountered a situation in which federal authorities blocked BCA access to an incident where there is concurrent federal and state jurisdiction.

20. After the FBI cleared the scene without providing the BCA access, local and state law enforcement officers were unable to hold the scene, and it was overrun by individuals in the area. The BCA was thus unable to examine the scene.

21. The BCA will continue to investigate this incident, but it is difficult to obtain evidence the BCA needs without assurance that evidence will be preserved and that we will be allowed access to it.

22. The BCA may be unable to conduct a thorough and complete investigation without access to the evidence the federal authorities collected at the scene.

23. In addition to the items sought in the attached search warrant, the BCA will seek access to the evidence in the FBI's and/or DHS's possession to conduct an investigation. Such information includes, but is not limited to: any physical evidence collected by the FBI and/or DHS; the names of DHS agents involved and present at the scene when the shooting occurred; the names of witnesses that were identified as well as any contact information for witnesses and any statements made or information they provided; and any firearms that were discharged or recovered.

24. I have been informed this incident is now being investigated by DHS, and not the FBI.

25. This is not the first time since Operation Metro Surge began that BCA has been prohibited from accessing evidence that it would typically be able to access for its normal investigative processes. I have also seen images circulating on social media of the alleged gun that it was used in today's shooting. It does not appear that the gun was protected according to normal law enforcement processes, and I am concerned about other evidence not being protected.

I declare under penalty of perjury that everything I have stated in this document is true and correct.

Executed on January 24, 2026                **s/ Drew Evans**
Anoka County                                Drew Evans
State of Minnesota