# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

_____

MINNESOTA BUREAU OF CRIMINAL
APPREHENSION & HENNEPIN
COUNTY ATTORNEY'S OFFICE,

      Plaintiffs,

v.

KRISTI NOEM, *in her official capacity as Secretary of the U.S. Department of Homeland Security*; JOHN CONDON, *in his official capacity as Acting Executive Associate Director of Homeland Security Investigations*; U.S. Department of Homeland Security; TODD LYONS, *in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement*; MARCOS CHARLES, *in his official capacity as Acting Executive Associate Director, Enforcement and Removal Operations;* U.S. Immigration and Customs Enforcement; RODNEY SCOTT, *in his official capacity as Commissioner of U.S. Customs and Border Protection;* U.S. Customs and Border Protection; GREGORY BOVINO, *in his official capacity as Commander of the U.S. Border Patrol*; U.S. Border Patrol; DAVID EASTERWOOD, *in his official capacity as Acting Director, Saint Paul Field Office, U.S. Immigration and Customs Enforcement*, PAMELA BONDI*, in her official capacity as Attorney General of the United States*; KASHYAP PATEL, *in his official capacity as Director of the Federal Bureau of Investigation*.

      Defendants.

Case No. 26-cv-628-ECT/DTS

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**

## INTRODUCTION

Plaintiffs, the Minnesota Bureau of Criminal Apprehension (MBCA) and Hennepin County Attorney's Office (HCAO), seek a temporary restraining order (TRO) requiring the Defendants to preserve evidence related to a recent incident involving Federal law enforcement officers. The Court should deny Plaintiffs' motion for a TRO. As the attached declarations demonstrate, Defendants are already preserving the evidence that Plaintiffs seek to preserve. Nor can Plaintiffs show a likelihood of success on the merits based on the Tenth Amendment, which does not remotely bestow on Plaintiffs a constitutional right to dictate the federal government's evidence-preservation procedures, particularly procedures involving an immigration-enforcement incident. Accordingly, the Court should dissolve the *ex parte* TRO entered on January 24, 2026 (ECF No. 10) and decline to issue any further injunctive relief.

## BACKGROUND

In December 2025, the Department of Homeland Security (DHS) launched Operation Metro Surge to address the dangers arising from the presence of illegal aliens in the Minneapolis area. As part of this operation, DHS officials have arrested murderers, rapists, gang members, and perpetrators of fraud. *See Minnesota v. Noem*, No. 0:26-cv-00190-KMM-DJF, ECF No. 33 (D. Minn.) (detailing these efforts). Operation Metro Surge is an exclusively Federal mission to enforce Federal immigration law led by Federal officers and agents. *See Minnesota v. Noem*, No. 0:26-cv-00190-KMM-DJF, ECF No. 35-1 ¶ 14 & 35-2 ¶ 7 (D. Minn.). No state, county, or municipal officials from Minnesota participate in Operation Metro Surge. *See id.* Indeed,

Minnesota and Minneapolis have sanctuary laws and policies that limit the cooperation of some state and local officials with Federal immigration officials, which has hindered the Federal government's ability to enforce immigration laws in Minnesota. *See id.*, ECF No. 35-1 ¶¶ 8-13.

This lawsuit relates to the January 24, 2026, incident involving the death of Alex Pretti. On January 24, 2026, this Court entered an *ex parte* TRO enjoining Defendants "from destroying or altering evidence related to the fatal shooting involving federal officers that took place in or around 26th Street and Nicollet Avenue in Minneapolis on January 24, 2026." ECF No. 10 at 2.[1]

## STANDARD OF REVIEW

In evaluating a motion for a temporary restraining order, a court must consider "(1) the likelihood of the movant's success on the merits; (2) the threat of irreparable harm to the movant in the absence of relief; (3) the balance between that harm and the harm that the relief would cause to the other litigants; and (4) the public interest." *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003). The movant has the burden on each factor. *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 731-32 (8th Cir. 2008) (en banc) (citation omitted); *see id.* at 732 n.6.9. Even though Plaintiffs seek a

---

[1] Defendants do not understand the Court's TRO that prohibits "destroying or altering evidence," ECF No. 10 at 2, to prevent Defendants from examining the collected evidence, including through standard law enforcement testing or other forensic techniques. Plaintiffs provide no basis for the Court to enjoin Defendants from investigating Saturday's incident.

2

discovery preservation order, the motion is properly brought as a TRO because it seeks injunctive relief.[2]

## I. Plaintiffs Cannot Show Irreparable Harm

Plaintiffs fail to establish that they will be irreparably harmed absent a temporary restraining order. A plaintiff seeking a preliminary injunction or temporary restraining order "must establish … he is likely to suffer irreparable harm in the absence of preliminary relief." *Glossip v. Gross*, 576 U.S. 863, 876 (2015) (quoting *Winter v. Nat'l Res. Def. Council*, 555 U.S. 7, 20 (2008)). Irreparable harm is "the single most important prerequisite" for interim injunctive relief. *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009). The "basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Watkins v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003). Thus, an order "may be appropriate so as to preserve evidence, where the movant has demonstrated that the opposing party is likely to destroy that evidence," but absent such a showing, the motion should be denied. *Runningshield v. Minnesota*, No. CIV 10-800 (JMR/RLE), 2010 WL 2772425, at *2 (D. Minn. May 25, 2010), *report and recommendation adopted*, No. CIV 10-800 (JMR/RLE), 2010 WL 2772434 (D. Minn. July 12, 2010. *See also Maddox v. Sather*, No. 20-CV-0645 (SRN/HB), 2020 WL 5652479, at *5 (D. Minn. Sept. 23, 2020) (no injunctive request

---

[2] *See Waters v. Cafesjian Fam. Found., Inc.*, No. CIV. 12-648 RHK/LIB, 2012 WL 2904806, at *1 n.1 (D. Minn. June 27, 2012), *report and recommendation adopted*, No. CIV. 12-648 RHK/LIB, 2012 WL 2906573 (D. Minn. July 16, 2012).

where "medical records are already subject to retention requirements" and plaintiff "has not expressed any credible reason to believe that an order is necessary to protect them").

Here, Plaintiffs will not suffer irreparable harm absent the issuance of an injunction because Defendants are already obligated to preserve the evidence at issue here under their own policies. *See* Declaration of Jeffrey R. Egerton (ICE) ¶¶ 7-14; FBI Declaration ¶¶ 3-5; Declaration of Mark Zito (CBP) ¶¶ 8-14. Further, as demonstrated in the attached declarations, Defendants are in fact doing so. FBI's Evidence Response Team gathered evidence from the scene of the shooting and other locations in the Minneapolis area using appropriate collection and handling procedures, and that evidence is currently preserved and stored in a secure evidence room at the Minneapolis field office. *See* FBI Dec. ¶¶ 3-4. The evidence is being preserved; nothing has been destroyed or altered. *See id.* ¶ 5. CBP has preserved all relevant body-worn camera footage from the incident and will do so for 75 years. Egerton Decl. ¶¶ 12-13. ICE is currently in custody of limited evidence and follows stringent requirements for the documentation, retention, and accountability of its investigative records and evidence. Zito Decl. ¶¶ 10-14.

Plaintiffs base their claim on mere conjecture. They assume—contrary to fact—that in the absence of injunctive relief, Defendants will fail to preserve this evidence. But as noted, Defendants are preserving the evidence. *See* Egerton Decl. ¶¶ 7-14; FBI Decl. ¶¶ 3-5; Zito Decl. ¶¶ 10-14. "[I]n the absence of clear evidence to the contrary," courts apply the "presumption of regularity" to "public officers" performing "their official duties." *McDonough v. Anoka Cnty.*, 799 F.3d 931, 948 (8th Cir. 2015). Plaintiffs have

provided no "clear evidence" of the contrary; meanwhile, Defendants have submitted multiple declarations explaining how they are in fact preserving the evidence in this case. *See generally* Egerton Decl.; FBI Decl.; Zito Decl.  Finally, Plaintiffs do not even allege themselves that such evidence will not be preserved, absent the injunction, going only so far as to "sugges[t]" that "the federal government *may* fail to preserve information that will be critical to a thorough investigation."  ECF No. 4 at 7 (emphasis added).  This conjecture is insufficient to establish irreparable harm, justifying the issuance of injunctive relief.

The only case Plaintiffs cite in support of their alleged irreparable harm is a securities enforcement action from the Northern District of California.  ECF No. 4 at 7 (citing *SEC v. Bivona*, No. 16-CV-01386-EMC, 2016 WL 2996903, at *2 (N.D. Cal. May 25, 2016)).  There, the SEC was investigating securities fraud and showed that the defendant was "diverting funds away from investors."  *Bivona*, 2016 WL 29936903.  Here, Federal investigative authorities are the Defendants; they are already obligated by agency policy to preserve the evidence at issue.  Nor do Plaintiffs make, much less establish, any allegation of fraud commensurate with those against the defendant in *Bivona*.

**II. Plaintiffs Cannot Show a Likelihood of Success on the Merits**

Plaintiffs also fail to establish likelihood of success on the merits of their claims.  Plaintiffs contend they "have a sovereign right to access information that the federal government may have seized and which directly relates to an investigation of a fatal shooting in Minnesota."  ECF No. 4 at 5.  To support this argument, Plaintiffs cite only

5

the Tenth Amendment to the United States Constitution. But "[t]he Tenth Amendment does not operate as a limitation upon the powers, express or implied, delegated to the national government." *Fernandez v. Wiener*, 326 U.S. 340, 362 (1945). Plaintiffs do not dispute that Defendants have ample authority to collect and maintain the evidence in question and nothing in the Tenth Amendment permits the Plaintiffs to boss the federal government around about how it carries on that authority.

The incident occurred as part of the Federal Government's immigration-enforcement operations. The "Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens." *Arizona v. United States*, 567 U.S. 387, 394 (2012); *see also* U.S. Const. art. I, § 8, cl. 4 (granting Congress the power to "establish an uniform Rule of Naturalization"). "Decisions about the removal of illegal aliens 'touch on foreign relations and must be made with one voice.'" *Iowa Migrant Movement for Justice v. Bird*, 157 F.4th 904, 919-20 (8th Cir. 2025) (quoting *Arizona*, 567 U.S. at 409). Congress vested the Executive Branch with broad authority to inspect, investigate, arrest, detain, and remove aliens who are unlawfully in the United States. *See, e.g.*, 8 U.S.C. §§ 1225, 1226, 1231, 1325, 1326, 1357. "A principal feature of [this]" congressionally established "removal system is the broad discretion exercised by immigration officials." *Arizona*, 567 U.S. at 396. The Supremacy Clause further "prohibit[s] States from interfering with or controlling the operations of the Federal Government." *United States v. Washington*, 596 U.S. 832, 838 (2022).

While the Supreme Court has recognized that the Tenth Amendment limits the Federal government's ability to commandeer state actions, *New York v. United State*, 505

6

U.S. 144, 161 (1992), Plaintiffs here seek to commandeer the Federal Government's maintenance of evidence relevant to federal operations.  Unlike traditional Tenth Amendment commandeering claims, they fail to cite in this case any Federal action that "require[s] [Plaintiffs] in their sovereign capacity to regulate their own citizens," *Reno v. Condon*, 528 U.S. 141, 151 (2000), or take any action themselves.  *Minnesota ex rel. Hatch v. United States*, 102 F. Supp. 2d 1115, 1122 (D. Minn. 2000), *aff'd sub nom. Minnesota Senior Fed'n, Metro. Region v. United States*, 273 F.3d 805 (8th Cir. 2001).  Nothing in the Tenth Amendment compels Federal officials to handle evidence according to the whims of state and local officials.  The Could may also deny the motion on this basis alone.

### III.    An Injunction Is Not in the Public Interest

The remaining factors required for a TRO—balancing of the harm to the opposing party and the public interest—also weigh against emergency relief here.  These factors merge when the Federal government is the opposing party.  *Nken v. Holder*, 556 U.S. 418, 435 (2009).  Plaintiffs contend that there is no harm to the government from the issuance of a TRO in this matter.  Not so.  Defendants are preserving information related to Saturday's incident consistent with law.  Entry of a court order to benefit state and local agencies, when they have no legal right to this information, is neither appropriate nor reasonable.  The Federal government would then be subject to supervision by this Court and by Plaintiffs.   The requested preservation order also could harm Defendants by overlaying their existing obligations with a Court order, creating a risk of potentially

burdensome consequences. Compliance disputes could also inappropriately inject the Court into Defendants' records management.

Because the Federal government has already taken the action Plaintiffs seek to enjoin, and has informed the Court of that action, this motion should be denied and the *ex parte* TRO vacated. Plaintiffs' order seeks to involve the Court in reviewing of what Defendants have done with relevant information—or even "potential evidence." *See* ECF 6 at 2, Pl.'s Proposed Preservation Order. They have provided no legal support or justification for such intrusive judicial involvement.

Defendants are aware of their obligations not to destroy evidence. As the declarations make clear, Defendants are complying with those obligations. The relevant government entities are entitled to the presumption "that they will act properly and according to law." *FTC v. Schreiber*, 381 U.S. 279, 296 (1965). While such a presumption may be overcome, the presumption must be rebutted with something more than the baseless speculation Plaintiffs assert here. *See McDonough*, 799 F.3d at 948.

## CONCLUSION

For the reasons set forth above, the Court should deny Plaintiffs' motion for a temporary restraining order and vacate the *ex parte* TRO.

Dated: January 26, 2026                    Respectfully submitted,

DANIEL N. ROSEN                            BRETT A. SHUMATE
U.S. Attorney                              Assistant Attorney General
                                           Civil Division

                                           MICHAEL VELCHIK

8

Senior Counsel to the Assistant
   Attorney General

/s/ *Andrew Warden*
ANDREW WARDEN (IN #23840-49)
Assistant Branch Director
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Telephone: (202) 616-5084
Fax: (202) 616-8470
Andrew.Warden@usdoj.gov

*Counsel for Defendants*