# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

MINNESOTA BUREAU OF CRIMINAL
APPREHENSION, et al.,

                  *Plaintiffs,*

    v.

Kristi NOEM, et al.

                  *Defendants.*

Case No. 26-cv-628

**DECLARATION OF MARK M. ZITO**

## DECLARATION OF MARK M. ZITO

I, Mark M. Zito, hereby declare as follows:

1.    I am employed by the United States Department of Homeland Security (DHS), U.S. Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI) as the Special Agent in Charge (SAC) of the HSI St. Paul Office. I have been acting in this position since November 2025. In this capacity, I oversee HSI St. Paul's workforce, which consists of special agents, criminal analysts, and mission support personnel throughout Minnesota, North Dakota, and South Dakota.

2.    Prior to my current assignment, I was the Special Agent in Charge of HSI Kansas City, providing executive leadership, direction, and supervision of over 380 special agents, task force officers, and support personnel assigned to ten HSI investigative offices in Missouri, Kansas, Nebraska, and Iowa. I was also previously the Division Chief of the HSI Academy where I was the executive leader responsible for directing the HSI Special Agent basic and advanced training programs. There, I managed a $22 million budget and a staff of 175 full-time subordinate supervisors and instructors.

3.      ICE is the largest investigative branch of DHS and is charged with the enforcement of more than 400 federal statutes. HSI employs Special Agents, who, among other things, are customs officers under 19 U.S.C. § 1401(i), empowered with the law enforcement authority set forth in 19 U.S.C. § 1589a. Under this authority, HSI Special Agents may "make an arrest without a warrant for any offense against the United States committed in the officer's presence or for a felony, cognizable under the laws of the United States committed outside the officer's presence if the officer has reasonable grounds to believe that the person to be arrested has committed or is committing a felony." 19 U.S.C. § 1589a.

4.      I am familiar with the complaint filed in this case and the temporary restraining order issued by this Court on January 24, 2026. This declaration is submitted in support of Defendants' Opposition to Plaintiffs' Motion for Temporary Restraining Order.

5.      The statements contained in this declaration are based upon my personal knowledge, reasonable inquiry, and information made available to me in the course of my official duties from information obtained from records, systems, databases, other DHS employees, and/or information portals maintained and relied upon by DHS.

6.      On January 25, 2026, the Office of the Executive Associate Director ICE Enforcement and Removal Operations (ERO) disseminated to all ICE ERO personnel a broadcast message and a copy of the temporary restraining order issued in the *Minnesota Bureau of Criminal Apprehension v. Noem case*, No. 26-628 (D. Minn. filed Jan. 24, 2026).

7.      On January 25, 2026, the Office of the Executive Associate Director ICE HSI disseminated to all ICE HSI personnel a broadcast message and a copy of the temporary restraining order issued in the *Minnesota Bureau of Criminal Apprehension v. Noem case*, No. 26-628 (D. Minn. filed Jan. 24, 2026).

8.      I am aware of a shooting involving U.S. Customs and Border Protection (CBP) personnel

on January 24, 2026. The shooting occurred near the intersection of Nicollet Avenue and West

26th Street in Minneapolis, resulting in the death of one individual.

9.      ICE officials were not involved in the shooting at issue but did assist in securing the scene

after the incident. ICE personnel, consisting of ERO and HSI, arrived at approximately 9:42 AM

CT. This response consisted of assisting with the maintenance of a perimeter to secure the scene

of an active investigation. This support was necessary in light of the increasing number of

protestors gathering at the location of the shooting.

10.     All recorded information made or received by the ICE agents and officers responding to

secure the scene after the incident would be federal records subject to the Federal Records Act (44

U.S.C. §§ 3101 *et seq.*), DHS Directive 141-01, and ICE policies relating to federal records and

information management. Per ICE Directive, all ICE employees and contractors must retain such

records pursuant to applicable records retention schedules and must complete annual records

management training. A copy of ICE Directive 4007.1 is attached as **Exhibit A**. In addition, ICE

agents generating records in connection with responding to the scene of a critical incident, such as

a shooting, are trained in proper reporting, documenting, and preserving of evidence.

11.     HSI is the lead investigatory entity reviewing the use-of-force encounter at issue in this

case. HSI agents tasked with this investigation are required to preserve all evidence collected,

including physical evidence collected by other federal agencies, which are then properly

transferred to the custody of HSI.

12.     While HSI is leading the investigation into the shooting, the Federal Bureau of

Investigation (FBI) initially responded to the scene of the shooting to collect evidence, including

a mobile phone and firearm belonging to the deceased. As of this filing, the mobile phone collected

by the FBI relating to the shooting was turned over to HSI.

13.     As the lead investigating agency, HSI will continue to collect evidence relating to the shooting, using various investigative methods and processes. As criminal investigators, HSI Special Agents are trained and experienced in the collection and preservation of evidence in connection with criminal investigations. HSI Special Agents routinely participate in the criminal discovery process and are well-versed in the Government's Constitutional obligations when cases culminate in a prosecution.

14.     ICE policies provide stringent requirements for the documentation, retention, and accountability of investigative records and evidence. The HSI Case Management Handbook requires HSI to "record all activity and document all information using case files." Case files are electronic records of all "information that pertains to a case including, but not limited to, subject record(s), documents (e.g., ROIs), hours, statistics, and the select media that is associated with a case." Additionally, the HSI Evidence Handbook requires documentation of seizure and chain of custody for evidence, as well as the transfer of custody of seized property/evidence, using DHS Form 6051S, 6051A, 6051R, 6051WT, or 6051D. Original documentation must remain with the evidence as the evidence moves physical locations or transfers between custodians. All seized evidence must be retained until the completion of all trial, appellate, or other judicial proceedings, or if the defendant becomes a fugitive prior to the adjudication of the case.

Pursuant to the provisions of 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my information, knowledge, and belief.

Executed on this 26th day of January 2026.


Mark M. Zito
Special Agent in Charge
Homeland Security Investigations, St. Paul
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security

FOR OFFICIAL USE ONLY

## U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT

**ICE Directive 4007.1**:  **Records and Information Management**

**Issue Date:**  January 25, 2021
**Superseded:**  None.
**Federal Enterprise Architecture Number:** 306-112-002b

1. **Purpose/Background.**  U.S. Immigration and Customs Enforcement (ICE) has the responsibility to effectively and efficiently manage all its records to meet the agency's strategic goals and mission requirements. This Directive establishes ICE policy and procedures for governing the management of records regardless of form or characteristics, created or received by ICE, consistent with Department of Homeland Security (DHS) policy and guidance. The preservation of all ICE records must be done in accordance with applicable laws, regulations, and policies.[1]

2. **Policy.**  All ICE employees and contractors are required to adequately maintain, identify, capture, retain, file, dispose, and transfer all ICE records within their respective Directorate or Program Office. All ICE records are required to be preserved appropriately, easily accessible, and dispositioned at the end of their lifecycle. This includes all ICE records created or received in the course of conducting ICE business, including email, according to applicable federal and DHS regulations. All ICE records, either electronic or hardcopy, must be maintained and stored in a centralized electronic records repository in accordance with records schedules approved by ICE's Office of Information Governance and Privacy (IGP) Records and Data Management Unit (RDM) and the National Archives and Records Administration (NARA).[2]

3. **Definitions.**  The following definitions apply for purposes of this Directive only.

3.1. **Capstone**.  Identification and capture of email records that should be preserved as permanent from the accounts of designated senior officials at or near the top of an agency who are generally responsible for agency and program policy and mission-related actions.

3.2. **Disposition**.  Actions taken when records are no longer needed to conduct current agency business, which include disposal or permanent preservation.

3.3. **Essential Record.**  Information that is essential to the continued functioning or reconstitution of an organization during and after an emergency and also essential to

---

[1] *See* 44 U.S.C. §§ 3102 – 07 and U.S. Dep't of Homeland Sec., DHS Directive No. 141-01, Records and Information Management (Aug. 11, 2014).

[2] There are three types of records: temporary, permanent, and unscheduled. Temporary records are those determined by NARA to be destroyed at the end of their lifecycle. Permanent records are determined by NARA to have sufficient value to continue preservation as part of the National Archives. Records that do not fall under a NARA-approved records schedule cannot be legally destroyed or transferred for storage. Unscheduled records are considered permanent until a records schedule is approved by NARA.  More information regarding ICE adherence to records schedules can be found in the accompanying Handbook.

FOR OFFICIAL USE ONLY

protecting the rights and interests of that organization and of the individuals directly affected by its activities.

**3.4.  Essential Records Manager.**  Serves as the individual responsible for coordinating the agency's Essential Records Program and Plan.

**3.5.  Essential Records Plan.**  Guidance that identifies records critical to continued agency operations in the event of an emergency and ensures that records are adequately protected and accessible.

**3.6.  Headquarters Responsible Officials (HROs).**  Executive Associate Directors (EADs) of Enforcement and Removal Operations, Homeland Security Investigations, and Management and Administration (M&A); the Principal Legal Advisor; the Associate Director of the Office of Professional Responsibility; and the Assistant Directors, Officers, or equivalent positions who report directly to the Director, Deputy Director, or Chief of Staff.

**3.7.  Permanent Records.**  Records appraised by NARA as having sufficient historical or other value to warrant continued preservation by the Federal Government beyond the time it is needed for administrative, legal, or fiscal purposes.

**3.8.  Records.**  All recorded information made or received by a Federal agency under Federal law or in connection with the transaction of public business and preserved or deemed appropriate for preservation by that agency or its legitimate successor as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the United States Government or because of the informational value of data they contain. Records do not include: library and museum material made or acquired and preserved solely for reference or exhibition purposes, or duplicate copies of records preserved only for convenience.[3]

**3.9.  Records Assistants (RAs).**  Representatives within a Directorate or a Program Office responsible for assisting the Records Liaison Officers (RLOs) with day-to-day records management activities.

**3.10.  Records Liaison Officers (RLOs).**  Designated representative responsible for overseeing records management activities within a Directorate or Program Office and coordinating those activities with RDM.

**3.11.  Records Schedule.**  A set of instructions that provides the legal authority for retention and disposition of records grouped together in a series. It is used to indicate the length of time records must be maintained, identifies records as either permanent or temporary, and provides mandatory instructions for the disposition of records. It may also be referred to as a retention schedule.

---

[3] *See* 44 U.S.C § 3301.

FOR OFFICIAL USE ONLY

**3.12.  Temporary Records.**  Records approved by NARA to be disposed of after a specified period.

**4.      Responsibilities.**

**4.1.    HROs** are responsible for ensuring compliance with this Directive within their Directorates and Program Offices, including the designation of RLOs and RAs.

**4.2.**    The **ICE Records Officer** is responsible for:

1) Overseeing, developing, issuing, and implementing ICE-wide records management policy and procedures;

2) Conducting site assessments and compliance visits of Directorates and Program Offices to include all ICE facilities—regardless of whether they are controlled by the Government or by non-government entities (e.g., detention facilities owned and/or operated by contractors)—to evaluate record-keeping practices and provide guidance and feedback concerning any risks or vulnerabilities that may exist;

3) Developing and implementing records management training;

4) Coordinating with the Office of the Chief Information Officer (OCIO) to ensure that electronic records management considerations for systems access and security controls are implemented;

5) Developing and implementing the Essential Records Plan; and

6) Establishing procedures and guidance for email records, to include Capstone.

**4.3.    OCIO** is responsible for coordinating with the RDM basic framework for electronic records management storage that enables ICE employees and contractors to follow records management policies.

**4.4.**    The **Essential Records Manager** is responsible for coordinating the agency's Essential Records Program, developing and maintaining ICE's Essential Records Plan, coordinating agency inventory of essential records, outlining measures to protect them, and annually conducting an Essential Records Risk Assessment. The Essential Records Manager periodically tests emergency plans and procedures to determine whether essential records are properly identified, protected, and managed, and also modifies plans and procedures when needed.

**4.5.    RLOs** are responsible for:

1) Assisting RDM with coordination and implementation of records policies and procedures within specific Directorates and Program Offices;

FOR OFFICIAL USE ONLY

FOR OFFICIAL USE ONLY

2)  Conducting an annual records inventory;

3)  Ensuring that office records are managed pursuant to DHS, ICE, NARA, and Office of Management and Budget policies, as well as applicable laws and regulations; and

4)  Ensuring that all Directorate and Program Office recordkeeping procedures are established, implemented, and periodically updated for all electronic and hardcopy records.

**4.6.**     **RAs** are responsible for assisting the RLO in coordinating RIM activities for the Directorate or Program Office, including managing the transfer and retrieval of program records to or from storage facilities, the creation of box lists documenting the records maintained in storage, and assisting with the management of paper and electronic filing systems that may exist within the Directorate, the Program Office or its sub-divisions. RA functions are a secondary duty. Directorate or Program Office leadership will assign these duties as needed.

**4.7.**     **ICE Employees and Contractors** are responsible for:

1)  Complying with the terms of this Directive;

2)  Transferring ICE records upon departure or separation and complying with the mandate to not exit with any records without prior approval from the Records Officer;

3)  Working with their Directorate or Program Office's RLO and/or RA to maintain, store, transfer, and/or dispose of records in accordance with law and policy; and

4)  Completing annual records management training.

**5.**     **Procedures/Requirements.**  See the most current version of the *Records and Information Management Handbook* for implementing guidance and procedures.

**6.**     **Recordkeeping.**  All records created by the RDM will be maintained in accordance with a NARA approved retention schedule.

**7.**     **Authorities/References.**

**7.1.**     5 U.S.C. § 552(a), (g).

**7.2.**     44 U.S.C. §§ 3101 – 07.

**7.3.**     44 U.S.C. § 21.

**7.4.**     44 U.S.C. § 29.

**7.5.**     36 C.F.R. §§ 1220.1 – 1239.26.

FOR OFFICIAL USE ONLY

**7.6.** U.S. Dep't of Homeland Sec., DHS Directive No. 141-01, Records and Information Management (Aug. 11, 2014).

**7.7.** U.S. Dep't of Homeland Sec., Fed. Emergency Mgmt. Agency, Federal Continuity Directive 1 (Jan. 2017).

**8.** **Attachment.** None

**9.** **No Private Right.** This Directorate provides only internal ICE policy guidance, which may be modified, rescinded, or superseded at any time without notice. It is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter. Likewise, no limitations are placed by this guidance on the otherwise lawful enforcement or litigative prerogatives of ICE.

Tae D. Johnson
**Acting Director**
**U.S. Immigration and Customs Enforcement**