UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

| | |
|---|---|
| MINNESTOA BUREAU OF CRIMINAL APPREHENSION AND HENNEIN COUNTY ATTORNEY'S OFFICE, | Case No. 26-cv-628 (ECT-DTS) |
| Plaintiffs, | |
| v. | |
| KRISTI NOEM, *in her official capacity as Secretary of the U.S Department of Homeland Security*; JOHN CONDON, *in his official capacity as Acting Executive Associate Director of Homeland Security Operations*; U.S. DEPARTMENT OF HOMELAND SECURITY; TODD LYONS, *in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement;* MARCO CHARLES, *in his official capacity as Acting Executive Director, Enforcement and Removal Operations*; RODNEY SCOTT, *in his official capacity as Commissioner of U.S. Customs and Border Protection*; U.S. CUSTOMS AND BORDER PROTECTION; GREGORY BOVINO, *in his official capacity as Commander-at-Large of U.S. Border Patrol*; U.S. BORDER PATROL; DAVID EASTERWOOD, *in his official capacity as U.S. Immigration and Customs Enforcement Field Office Director for St. Paul, Minnesota*; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; PAMELA BONDI, in her official capacity as Attorney General of the United States; KASHYAP PATEL, in his Official capacity as Director of the Federal Bureau of Investigation. | **DECLARATION OF JEFFERY R. EGERTON** |
| Defendants. | |

_____

I, Jeffrey R. Egerton, hereby declare as follows:

1.      I am employed by U.S. Customs and Border Protection (CBP). CBP is charged with enforcing the Nation's immigration laws in order to protect national security and uphold the integrity of the immigration system. As part of this mission, CBP Border Patrol agents and U.S. Customs and Border Protection officers are responsible for preventing the unlawful entry of individuals into the United States, apprehending those who attempt to enter illegally or who have violated the immigration laws. Through these activities, CBP seeks to secure the border, disrupt human smuggling and trafficking networks, and ensure consistent enforcement of the immigration laws of the United States.

2.      I am the acting Executive Director for the Investigative Operations Directorate, within CBP's Office of Professional Responsibility (OPR) located in Washington D.C. In this role, I oversee over 500 criminal investigators who are charged with investigating criminal and administrative misconduct of CBP employees and contractors. Additionally, my office is charged with oversight responsibilities that include the review of use of force incidents involving CBP employees.

3.       Prior to entering on duty with CBP OPR, I was a United States Border Patrol Agent for seventeen years, serving in various agent/management positions. I entered on duty with CBP OPR on January 12, 2012, as a Senior Special Agent. In this position, I performed the functions of a criminal investigator to include reviewing completed investigations to ensure investigative sufficiency and mentoring subordinates. On April 30, 2017, I was promoted to the Director of Operations for the eastern portion of the United States. In this position, I supervised five Special Agents in Charge and had oversight of operations of those offices. On April 12, 2020, I was promoted to the position of Deputy Executive Director. I have been acting as the Executive Director of the Investigative Operations Directorate since August 18, 2025.

 4.     I am familiar with the complaint filed in this case. I am also familiar with the temporary

restraining order issued by this Court on January 24, 2026. This declaration is submitted in support of Defendants' Opposition to Plaintiffs' Motion for Temporary Restraining Order.

5.  For Operation Metro Surge, my office deployed twelve to fourteen agents to respond and investigate critical incidents, to include uses of force, assaults on federal agents, and allegations of employee misconduct, and provide protection to senior CBP officials.

6.  The statements contained in this declaration are based upon my personal knowledge, reasonable inquiry and information made available to me in the course of my official duties, consisting of internal, evolving situation reports, preliminary reports in CBP's Enforcement Action Statistical Analysis and Reporting (E-STAR) System, and other reports made available to me. This declaration is based on my preliminary assessment of the developing body of documentation.

7.  On January 25, 2026, the CBP Chief Counsel disseminated a Notice of Legal Hold and Preservation of Documents to all operational components and other relevant CBP offices with a requirement to distribute the hold to all personnel currently assigned to Operation Metro Surge in Minneapolis that have access to information required to be preserved.

8.  I am aware of a CBP-involved shooting that occurred on January 24, 2026, in Minneapolis around the intersection of Nicollet Ave and W 26th Street that resulted in the death of one individual.

9.  When there is a CBP-involved shooting, OPR is usually involved in any subsequent investigation, whether as lead or as an assisting entity.

10. Here, CBP OPR is assisting Immigration and Customs Enforcement Homeland Security Investigations (ICE HSI) as they are the lead investigative entity.

11. CBP OPR was not involved in gathering evidence at the scene.

12.     The body worn camera footage for the involved CBP law enforcement personnel is preserved. CBP Policy requires CBP officers and agents who activate a body-worn camera to document the existence of recorded data consistent with their components standard operating procedures. Any recorded data that may have material or probative value or may have any bearing on any criminal, administrative, civil or other legal proceeding must be preserved for 75 years.

13.     The body worn camera footage uploaded by the involved CBP law enforcement personnel is in a category that preserves it for 75 years.

14.     Recorded information made or received by CBP personnel in the course of their employment is subject to the Federal Records Act (44 U.S.C. §§ 3101 *et seq*.), and DHS and CBP policies related to federal records and information management. All CBP employees must properly create, maintain, use, protect, and dispose of records, data, and information within their program areas and complete annual records management training.

I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge and belief, and in accordance with the preliminary information I have received.

Executed this 26th day of January 2026 at Washington, D.C.

_____

Jeffrey R. Egerton